Bartolo Fortunet, Petitioner, v. Puerto Rico Planning, Urbanizing, and Zoning Board, Respondent.

No. 5.   Argued April 11, 1947.—Decided April 28, 1947.

*José O. Sabater* for petitioner.   *Rafael R. Fuertes* and *Félix Bello* for respondent.

Mr. Justice Todd, Jr., delivered the opinion of the Court.

By public deed number seventy-seven, executed before Notary José Sabater in Mayagüez on April 19, 1944, Bartolo Fortunet acquired by purchase from Mrs. Elvira Quiñones an urban property described as follows:

"Urban: Lot situated in Sol Street of Mayagüez, having an area of two hundred and seventy-six meters and one square centimeter (276–01) and bounded on the north by a house belonging to the heirs of Arzamendi; on the South by Sol Street where it is situated; on the east by a property of F. Carrera & Hermano; and

on the west by a property of Alejo Llull. It contains the following buildings: belonging to it a one-story frame house with a concrete basement, having a porch in the front measuring six meters and seventy-two centimeters front by the same measurement in depth and another one-story concrete house roofed with galvanized iron six meters and one centimeter in front by seven meters and twenty-two centimeters in depth, with its kitchen measuring two meters and seventy-one centimeters in front by one meter and eighty-two centimeters in depth."

On February 28, 1945, Bartolo Fortunet segregated from the aforesaid main property one of the houses with its lot and sold it to Antonio Masdeu and on October 13, 1945, by public deed number 171 executed before the same notary, he sold the other house and lot to Bartolo Rivera Pérez. Since the segregation made by Mr. Fortunet constituted a subdivision, the approval of the Puerto Rico Planning, Urbanizing, and Zoning Board was sought in order that the new purchasers might record their titles in the registry of property. The Board disapproved the subdivision on the ground that "Although the lots to be formed by means of the proposed subdivision have all the facilities required by this Board for areas where subdivisions may be approved, said lots would have a frontage of 6.75 meters and 9.02 meters and their respective areas would be 131.14 and 169.69 square meters, respectively, contrary to the provisions of Articles 34 and 36 of the Subdivision Regulations which require a minimum frontage of 12 meters and a minimum area of 300 square meters."

A motion for reconsideration was filed and denied after a hearing, the Board stating at the close of its order that ". . . according to the evidence presented it was not proved that this segregation existed IN FACT prior to September 5, 1944 . . ."

On petition of Fortunet we issued a writ of review in this case. Petitioner maintains that the Board cannot prevent the recordation in the registry of property of segregations and buildings already in existence prior to the approval of

the Act which created the Board or of the Regulations promulgated by the latter if it is shown that it is impossible to comply with said regulations.

Notwithstanding the statement of the Board at the close of its order, *supra,* in the brief filed before this Court it states: ". . . the respondent Board concedes that as a matter OF FACT the two (2) houses were in existence prior to the Act or Regulation."

An this is so because the evidence presented before the Board showed that, as a matter of fact, the two houses were constructed on the original lot more than twenty-three years ago; that each one of the houses was assessed and pays taxes separately; that each house has a different number, that is, Nos. 5 and 7, Santiago R. Palmer Street (formerly Sol). Furthermore, it was also proved that the two houses are adjacent to other buildings of a permanent character, precluding the extension of the lot where each is situated.

■■ In the administrative appeal of *Rivera* v. *Registrar,* 64 P.R.R. 440, in affirming a ruling refusing recordation of a segregation, we said that the term subdivision, as used in § 2 of the Planning, Urbanizing, and Zoning Act, does not exclude from its meaning parcels of land on which buildings are located, and that where a lot is divided into two parcels in order to sell one of them, a subdivision takes place and we held, copying from syllabus 4, that: "Since it appeared in the instant case that both the division into two parcels of the lot on which certain buildings stood and the sale of one of said parcels took place after the Planning, Urbanizing, and Zoning Act had become effective, *held:* that the registrar acted correctly in refusing to record said sale for failure to present the proper subdivision plat approved by the Planning Board or a certificate from said Board excusing such presentation."

■■ In the course of the opinion in that case we further said, at page 443:

"It is true that the house standing on the lot sold to Ramón Rivera *was built a long time before* the approval of the Puerto Rico Planning, Urbanizing, and Zoning Act and at the outset this circumstance seems to indicate that the transaction described in the deed should not be subject to the Act, to the Subdivision Regulations, nor to the regulations approved by the Attorney General of Puerto Rico under the authority conferred on him by the Act. But it is not difficult to realize that the Subdivision Regulations, *irrespective of the construction of the building,* provide certain requirements in connection with the lot on which the building is situated, for example, the area of the lot, the distance from the boundary line of adjacent lots, the water supply with which the lot shall be provided in a manner which should meet the requirements of the Department of Health, area of the front, side, and rear yards, etc. If the lot where the house sold to Ramón Rivera is built does not meet the requirements provided by law, there is no doubt that the Planning Board could have in some way required the defect to be corrected, either by acquiring more land or in any other reasonable way under the circumstances. To this effect, Article 51 of Subdivision Regulations provides *that when it is shown to the Board that there are extraordinary circumstances that do not permit full compliance with these Regulations, the Board may modify the application of any Section, provided the public welfare is not impaired.''* (Italics ours.)

Applying this reasoning to the case at bar, it may be said that since the deed of segregation was executed by petitioner Fortunet subsequent to the effective date of the Planning Act and the Subdivision Regulations, the fact that two houses constructed prior to said effective date are located on both lots, does not render the said Act or Regulations inapplicable. However, as we said in the *Rivera* case, Article 51 of the Subdivision Regulations provides that "when it is shown to the Board that there are extraordinary circumstances that do not permit full compliance with these Regulations, the Board may modify the application of any Section, provided the public welfare is not impaired."

Has it not been shown that in the present case there exist these extraordinary circumstances? We believe so. The Board itself in its decision admits that "the lots to be formed

by means of the proposed subdivision *have all the facilities required by this Board for areas where those subdivisions are to be approved"* but refused approval merely because the lots segregated would have less than 200 square meters and less than 12 meters frontage. But the evidence shows that both lots where the houses are situated not only bound each other but are adjacent to other properties which contain buildings of a permanent character which prevent the extension of either lot. And this situation was not created by the segregation effected in 1945. On the contrary, it has as a matter of fact existed for more than twenty years, and the purpose now is to make it valid in the registry of property by recording it thus complying with the public policy that property should appear recorded in the name of its owner. We do not see what prejudice to the "safety, health, defense, moral, order, convenience, prosperity, culture, economic solvency, and general welfare of the present and future inhabitants of this zone," as was stated by the Board in its order denying the reconsideration sought by the petitioner, may arise in a case like the present one where the purpose is not to obtain the approval of a proposed subdivision for new buildings but to legalize a factual situation which has existed for more than twenty years, especially when, as we have said, the Board itself in its original order admits that the lots to be formed by the proposed subdivision have ". . . all the facilities required by this Board . . ."

We are of the opinion that the respondent Board committed an error of law in failing to apply Article 51 of the Regulations, *supra,* to the facts of this case, and consequently the order being reviewed must be vacated and the case remanded for further proceedings.